[Docket No. 28.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

UNITED STATES OF AMERICA,

v.

ROBBY VELAZQUEZ,

Defendant.

Crim. No. 23-657 (RMB)

**MEMORANDUM ORDER**

**RENÉE MARIE BUMB, Chief United States District Judge:**

Defendant Robby Velazquez asks this Court to reconsider its decision denying his motion to suppress a handgun and magazines that Camden County Police Officers recovered from his backpack during a warrantless stop and search. [Docket No. 28.] Velazquez bases his reconsideration motion on a witness, Shaunette Woods, who claims she was present on the day of his arrest. Woods claims she did not see Velazquez meet with anyone in the vacant lot before a Camden County police officer approached him. Velazquez seeks to use Woods' testimony to undermine Camden County Police Officer Elliot Romero's testimony that he saw Velazquez engage in a hand-to-hand transaction in the vacant lot—the reason Romero stopped him.

Having heard Woods' testimony and observed her demeanor during questioning, the Court does not find her testimony credible. In addition, the officers' body camera footage contradicts her testimony in many ways. Thus, the Court **DENIES** Velazquez' reconsideration motion.

## I. WOODS' TESTIMONY

Woods, a convicted drug trafficker, was present in the vacant lot on the day police arrested Velazquez. [Hr'g Tr. 6:14 to 7:10, 8:3 to 5, 10:8-10; Def. Ex. D1 (a screenshot from Officer Derek Saville's Body Camera Video (Gov't Ex. B)).] According to Woods, she arrived in the vacant lot about thirty to forty-five minutes before Velazquez did. [Hr'g Tr. 10:15 to 17.] She had met a friend at the lot and were talking. [*Id*. at 8:6 to 10, 10:11 to 14.] Woods went to the lot to "get[] warm" because the house she lived in "was cold." [*Id.* at 10:11 to 21.] At some point, Woods saw Velazquez enter the lot and he asked her "was it a safe spot for him to sit for a couple minutes." [*Id.* at 7:15 to 19.] Woods said it was. [*Id.*] Woods and her friend continued to talk after Velazquez arrived. [*Id.* at 11:23 to 25.]

Woods estimates that Velazquez sat on his bike in the lot for about ten minutes before the police arrived. [*Id.* at 7:20 to 8:2.] During those ten minutes, Woods did not see Velazquez meet with anyone, or "hand anything to or get anything from anyone." [*Id.* at 16:14 to 21.] According to Woods, the officer arrived in the lot without announcing his presence, approached Velazquez, and immediately grabbed his bike's handlebars. [*Id.* at 8:3 to 5, 12:15 to 22, 14:21 to 15:4.] Woods then saw the officer struggle with Velazquez. [*Id.* at 12:20 to 22, 13:17 to 23.] She then saw "five to six cops jump[]" on Velazquez, and they all struggled with him. [*Id.* at 16:15 to 21.] The officers struggled with Velazquez for about "five or six minutes" and Woods watched the struggle for that long. [*Id.* at 16:3 to 7, 16:22 to 24.] Woods left after the struggle. [*Id.* at 15:23 to 24.]

## II. VELAZQUEZ' MOTION FOR RECONSIDERATION

While the Federal Rules of Criminal Procedure do not provide for reconsideration motions, this District's Local Rules allow a criminal defendant to seek reconsideration of an

2

order. *United States v. Tablack*, 2022 WL 37428, at *2 (D.N.J. Jan. 4, 2022); *see also United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003) (finding that motions for reconsideration may be filed in criminal cases). Courts will reconsider a prior ruling only if the defendant shows: "(1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *United States v. Jenkins*, 2022 WL 2657139, at *1 (D.N.J. July 8, 2022). Reconsideration "is 'an extraordinary remedy' that is to be granted 'very sparingly.'" *United States v. Bergrin*, 2013 WL 4501469, at *1 (D.N.J. Aug. 22, 2013) (quoting *NL Indus. Inc. v. Commercial Union Ins.,* 935 F. Supp. 513, 516 (D.N.J. 1996)).

Velazquez seeks reconsideration claiming Woods' testimony is "newly discovered evidence" and the Court must consider it to "prevent a manifest injustice." [Mot. for Reconsideration ¶¶ 10-11 (Docket No. 28).] According to Velazquez, Woods' testimony contradicts Romero's testimony on the officer's initial observation of him in the vacant lot. [*Id.*¶ 8.] He argues Woods' testimony will require this Court to "reassess whether [Romero's testimony] is still credible." [*Id.*¶ 10.]

### III. DISCUSSION

Having heard Woods' testimony and after observing her demeanor during questioning, and having rewatched the officers' body camera footage in light of Wood's testimony, the Court does not find her credible for three reasons.

*First*, during questioning, Woods was evasive and combative. For example, the Court asked her to clarify her testimony on when she "put [her] head up" because she had testified that her head had been down. [Hr'g Tr. 12:23 to 24.] Woods curtly responded, "When the cop walked in. Why wouldn't I put my head up?" [*Id.* at 12:25 to 13:1.] In addition, Woods

3

appeared too eager to help Velazquez. She testified that Velazquez "didn't do anything wrong" during the ten minutes she saw him in the lot. [*Id.* at 11:23 to 12:1.]

*Second*, setting her demeanor aside, the officers' body camera footage contradicts Woods' testimony in many ways. Indeed, Woods testified she was sitting with a friend in the vacant lot talking when Velazquez arrived. [*Id.* at 8:6 to 10, 10:11 to 14, 11:23 to 25.] Romero's body camera footage tells a different tale. The video shows Woods sitting by herself in the lot as the officer approached Velazquez. [Gov't Ex. A at :46 to :48.] Not a friend in sight. Next, she testified five to six officers struggled with Romero and the struggled lasted for five or six minutes. [Hr'g Tr. at 16:3 to 7, 16:15 to 24.] Romero's and Officer Derek Saville's body camera footage reveal only those two officers struggled with Velazquez. [Gov't Ex. A :50 to 3:20; *see also* Gov't Ex. B.] The entire struggle lasted at most two minutes. [Gov't Ex. A :50 to 3:20 (placing handcuffs on Velazquez).] Woods also testified that she stayed for the entire struggle and left after it. [Hr'g Tr. at 15:23 to 24, 16:22 to 24.] Yet Saville's body camera footage shows Woods standing by herself and leave during the struggle. [Gov't Ex. B at :13 to :20.] In fact, Woods left the lot before the officers even handcuffed Velazquez. [*Id.*]

*Third*, the Court cannot overlook Woods' prior conviction for possessing heroin with intent to distribute it when weighing her credibility. [Hr'g Tr. 10:8 to 10.] A drug trafficking conviction bears directly on a witness's veracity. *United States v. Cooper*, 2021 WL 3732789, at *7 (E.D. Pa. Aug. 24, 2021) (explaining that "courts have concluded that prior drug convictions 'are relevant to a [witness] veracity because 'a drug trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie.'" (quoting *United States v. Rose*, 2008

4

WL 650034, at *6 (E.D. Pa. Mar. 7, 2008))). Woods' prior drug trafficking conviction, coupled with her presence in "a notorious drug set," *United States v. Velazquez*, 2024 WL 49690, at *1 (D.N.J. Jan. 4, 2024), makes the Court question Woods' testimony that she went to the lot to warm up.

Thus, the Court rejects Woods' testimony on her observations of Velazquez, and as such, there is nothing for this Court to reconsider.

### IV. CONCLUSION

For the above reasons, and for good cause shown,

**IT IS**, on this **23rd** day of **April 2024**, hereby:

**ORDERED** that Defendant Robby Velazquez' Motion to Reconsider this Court's Order Denying his Motion to Suppress Physical Evidence is **DENIED** (Docket No. 28).

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge